**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CHARLIE SCOTT,
   Plaintiff,

v.

MELODY M. MADDOX, *individually*;
JOHN DOES, *in their individual capacities*;
*and* JANE DOE, *in her individual capacity*,
   Defendants.

Civil Action No.
1:23-cv-02083-SDG

**OPINION AND ORDER**

    This case is before the Court on Defendant Melody M. Maddox's motion to dismiss the second amended complaint [ECF 27]. For the following reasons, Maddox's motion is **GRANTED**, and the claim against Maddox is **DISMISSED WITHOUT PREJUDICE**. Additionally, Plaintiff Charlie Scott is **GRANTED LEAVE** to file a motion for early discovery pursuant to Fed. R. Civ. P. 26(d)(1), if he so desires.

**I.**    **Background**

    It is important to emphasize, given the incendiary nature of the allegations in the complaint, that at the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). At the time of the events that form the basis for the complaint,

Scott was a pretrial detainee at the DeKalb County, Georgia Jail.[1] Maddox is the Sheriff of DeKalb County, and in that role she is responsible for overseeing the operation of the Jail.[2] The second amended complaint also names several John Doe defendants, representing certain DeKalb County deputy sheriffs employed at the Jail, as well as a Jane Doe, representing a nurse employed at the Jail.[3]

This is a civil rights case under 42 U.S.C. § 1983. Scott alleges that he was approached by Jane Doe on or about February 14, 2022, who asked Scott if he wanted to make some money.[4] Jane Doe forewarned Scott that other inmates would beat him badly enough that he would require hospitalization.[5] The complaint does not say whether Scott agreed to Jane Doe's proposal. Later that day, a group of five inmates—all gang members—attacked Scott.[6] At least one

---

[1] ECF 19, ¶ 13. When this case was initiated, Scott was an adult inmate being held at the Georgia Diagnostic and Classification Prison in Jackson, Georgia. *Id.* ¶ 2. According to the Georgia Department of Corrections website, Scott is now incarcerated at Augusta State Medical Prison in Grovetown, Georgia. *See* https://services.gdc.ga.gov/GDC/OffenderQuery/ jsp/OffQryForm.jsp (search last name: Scott, first name: Charlie) [https://perma.cc/WMP9-QBQ6].

[2] ECF 19, ¶ 3.

[3] *Id.* ¶¶ 4–6.

[4] *Id.* ¶ 20.

[5] *Id.*

[6] *Id.* ¶ 21.

officer watched the attack but did nothing to intervene.[7] The attack left Scott with a broken eye socket and a broken nose, and he was taken to Grady Memorial Hospital by one of the deputies (John Doe 1).[8] At the hospital, John Doe 1 hid contraband items (*i.e.*, tobacco, cigarette lighters, and a cell phone) in Scott's wheelchair to smuggle them into the Jail.[9]

Despite having suffered the February 2022 attack, Scott remained housed in the same part of the Jail: Cell 503, Pod 500, 3SW.[10] On or about March 27, 2023, Scott was attacked by five inmates.[11] Scott was seriously injured again, requiring more treatment at Grady.[12] During this episode, two other deputies (John Does 2 and 3) attempted to smuggle contraband back into the Jail using Scott's wheelchair.[13] The five attackers were indicted for the March 2023 assault.[14]

Now the victim of two similar attacks, Scott remained housed in the same part of the Jail.[15] Jane Doe warned Scott of another attack on or about April 25,

---

[7]   *Id.* ¶ 22.
[8]   *Id.* ¶¶ 23, 24.
[9]   *Id.* ¶¶ 26, 27.
[10]  *Id.* ¶ 28.
[11]  *Id.* ¶ 29.
[12]  *Id.* ¶¶ 31, 32.
[13]  *Id.* ¶ 32.
[14]  *Id.* ¶ 30.
[15]  *Id.* ¶ 33.

2023.[16] Sure enough, Scott was attacked again by several gang members, causing him to suffer additional serious injuries.[17] John Doe 3 and another deputy (John Doe 4) transported Scott to Grady for treatment, though Scott alleges there is no documentation of the incident.[18] Scott does not explicitly allege that John Does 3 and 4 smuggled contraband into the Jail using his wheelchair after the April 2023 attack, though it is implied elsewhere in the complaint.[19]

Maddox moves to dismiss the operative second amended complaint, arguing that she is entitled to qualified immunity on the ground that Scott has not stated either a direct liability claim against her for deliberate indifference nor a supervisory liability claim.[20] Maddox also urges the Court to dismiss the John and Jane Doe defendants as improperly-pled fictitious defendants.[21] Scott filed an opposition, and Maddox filed a reply.[22]

---

[16]  *Id.* ¶ 34.

[17]  *Id.* ¶¶ 35, 36.

[18]  *Id.* ¶¶ 37, 38.

[19]  *See id.* ¶ 41 ("Defendants placed and kept [Scott] in the same cell for the sole purpose of being assaulted and transported to the hospital so that contraband could be ferried into the Jail through [Scott's] wheelchair.").

[20]  *See generally* ECF 27.

[21]  *Id.*

[22]  ECFs 30, 31.

## II.     Applicable Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). A complaint is plausible on its face when a plaintiff pleads facts sufficient for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The principle that, at this stage, the court must accept well-pled facts as true and draw inferences in the plaintiff's favor, *FindWhat Inv'r Grp.*, 658 F.3d at 1296, does not apply to legal conclusions, *Iqbal*, 556 U.S. at 678.

## III. Discussion

Maddox argues that, on the facts as alleged, she is entitled to qualified immunity, and the second amended complaint should be dismissed. First, it helps to clarify the scope of the Court's inquiry. Maddox argues that Scott has failed to state any claim at all against her for supervisory liability under Section 1983; Scott contends that he has.[23] The second amended complaint contains two counts, each labeled "Count 1."[24] Though not entirely clear, Count 1 (the first one) appears to be a direct liability claim against every Defendant for his or her respective role in allowing Scott to be repeatedly attacked.[25] Count 2 (the second Count 1) is pled only against the "Supervisory Defendants," which is defined to include the John Doe defendants, for failing to protect Scott.[26] By its plain terms, then, only Count 1 is directed at Maddox, and there is no indication that Count 1 is a supervisory liability claim (as opposed to a direct-liability deliberate indifference claim).

---

[23] *Compare* ECF 27-1, at 15, *with* ECF 30, at 10.

[24] ECF 19, ¶¶ 35, 47.

[25] *See id.* ¶¶ 35–46.

[26] *Id.* ¶¶ 6, 47–52.

Scott's opposition brief refers to two allegations related to a deliberate indifference claim.[27] The parties seem to have coalesced around construing Count 1 as a direct claim for deliberate indifference,[28] which requires:

> 1. *First*, . . . the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'"
>
> 2. *Second*, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk."

*Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (citations omitted).

---

[27] ECF 30, at 10. There is also a separate allegation in the complaint that "Maddox was grossly negligent in her supervision of the John and Jane Doe Defendants" and "failed to adequately train and supervise these Defendants." ECF 19, ¶ 9. These allegations are the sort of "formulaic recitation of the elements of a cause of action" that do not satisfy Rule 8(a)(2). *Iqbal*, 556 U.S. at 678. Nor does Scott provide any support for his contention that the specific facts in his complaint adequately allege the elements of a supervisory liability claim. *See Cottone v. Jenne*, 326 F.3d 1352, 1360–61 (11th Cir. 2003) (listing the elements of a supervisory liability claim under Section 1983). If Scott wishes to bring a supervisory liability claim against Maddox, he should make that clear in an amended pleading. *See* Fed. R. Civ. P. 10(b).

[28] *Compare* ECF 27-1, at 9–14, *with* ECF 30, at 5–10.

### A.   The second amended complaint is an impermissible "shotgun pleading."

The foregoing analysis is indicative of the difficulty in appraising the second amended complaint. Though not raised by Maddox, the Court has an independent obligation to consider whether the second amended complaint is a "shotgun pleading." *See Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) (noting that "the district court, acting on its own initiative, should have stricken [the] complaints and instructed counsel to replead their cases."). A shotgun pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (citations omitted). Shotgun pleadings "patently violate" the federal pleading standards. *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).

The Eleventh Circuit has identified four categories of shotgun pleadings. *Weiland*, 792 F.3d at 1321–23. At issue here is the category of shotgun pleadings that "assert[ ] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.[29] Such a misstep is

---

[29] *Weiland* distinguished *Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir. 2000), relied on by Scott, on this point. *See* 792 F.3d at 1323 n.14. However, these cases can be reconciled, as a "complaint [that] can be fairly read to aver that all defendants are responsible for the alleged conduct," *Kyle K.*, 208 F.3d at 944,

particularly problematic here, as the Eleventh Circuit has held that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference," and therefore "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

To state a deliberate indifference claim, Scott relies on a series of allegations against "Defendants" generally.[30] Stripping away those allegations that simply recite the elements of a deliberate indifference claim, the Court is left with the following allegations: (1) "[o]ver 2022 and 2023, the Sheriff, Jane Doe, and the John Doe defendants knew that the [sic] Charlie's pod contained gang inmates who were attacking Charlie"; (2) "[b]ut for the defendants [sic] deliberate actions of ignoring Charlie's cries for help and using their officer status to sanction the gang beatings, Charlie would not have suffered injury"; and (3) "the Defendants placed and kept Charlie in the same cell for the sole purpose of being assaulted and transported to the hospital so that contraband could be ferried into the Jail through Charlie's wheelchair."[31] However, a holistic reading of the second and third

---

does not necessarily "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *Weiland*, 792 F.3d at 1323.

[30]  ECF 30, at 6 (citing ECF 19, ¶¶ 33, 37–38, 41–45).

[31]  ECF 19, ¶¶ 33, 38, 41.

allegations indicates that, in context, the "defendants" referenced in those allegations are the John Does, *i.e.*, the deputies responsible for maintaining the custody and security of pretrial detainees on a day-to-day basis, and not necessarily Maddox herself.[32]

This interpretive difficulty on a dispositive issue counsels in favor of requiring Scott to re-plead his allegations. *Cf. Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (noting that "[t]he complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of" and directing the district court to order re-pleading). For the avoidance of doubt, this dismissal does not preclude Scott from alleging in an amended complaint (1) that Maddox was in fact present at the Jail during the events in question, or (2) any other fact supporting the inference that she was subjectively aware of the substantial risk of harm to Scott, if such pleading is possible, consistent with the Federal Rules of Civil Procedure. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678. However, Scott is advised that any such amended

---

[32]   *See generally id.* ¶¶ 33–46; *id.* ¶ 39.

complaint must identify by name the Defendant(s) relevant to each discrete factual allegation.

### B. The Court will grant leave for Scott to move for limited early discovery as to the identities of the fictitious defendants.

Maddox is correct that "[a]s a general matter, fictitious-party pleading is not permitted in federal court," *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010), though the Eleventh Circuit has recognized a limited exception where "the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" *id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). However, other judges in this district have recognized that Eleventh Circuit caselaw "does not appear to foreclose the possibility of recognizing an exception, as has been approved in other Circuits, allowing a plaintiff to name fictitious party defendants where discovery is needed to determine the identity of such person." *Roe v. Doe*, No. 1:19-CV-03293-JPB, 2019 WL 13215281, at *1 (N.D. Ga. Oct. 10, 2019) (quoting *Breaking Glass Pictures, LLC v. Doe*, No. 1:13-CV-0882-AT, 2013 WL 8336085, at *5 (N.D. Ga. Apr. 12, 2013)) (internal quotation marks omitted).

The Court notes that Scott has not requested early discovery. That said, this Order's dismissal of Maddox—leaving only the fictitious defendants—may leave Scott with essentially no options to continue his case. Accordingly, the Court will grant Scott leave to file a motion for early discovery pursuant to Fed. R. Civ. P. 26(d)(1), if he so desires. Scott is advised that any such early discovery will be

limited to identifying the fictitious defendants and cannot be used to bolster his claims against Maddox or any other potential defendant who has not already been described by pseudonym in the current second amended complaint. *Cf. Roe*, 2019 WL 13215281, at *1.

## IV.   Conclusion

Maddox's motion to dismiss the second amended complaint [ECF 27] is **GRANTED**, and the claim against Maddox is **DISMISSED WITHOUT PREJUDICE**.

Scott is **GRANTED LEAVE** to file an amended complaint consistent with this Order, or alternatively to file a motion for early discovery pursuant to Fed. R. Civ. P. 26(d)(1), within 14 days. Such a motion for early discovery will toll the deadline for Scott to file an amended complaint, pending further Order of this Court. The Clerk of Court is **DIRECTED** to submit this Order to undersigned after 14 days.

In the interim, the Clerk is further **DIRECTED** to administratively close this case.

**SO ORDERED** this 31st day of March, 2025.

_____
Steven D. Grimberg
United States District Judge